# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 12, 2020　　　　Decided May 26, 2020

No. 19-5087

SHANDS JACKSONVILLE MEDICAL CENTER, INC., DOING
BUSINESS AS UF HEALTH JACKSONVILLE, ET AL.,
APPELLEES

AFFINITY HOSPITAL, LLC, DOING BUSINESS AS TRINITY
MEDICAL CENTER, ET AL.,
APPELLANTS

v.

ALEX MICHAEL AZAR, II, SECRETARY OF HEALTH AND
HUMAN SERVICES,
APPELLEE

———

Consolidated with 19-5227

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-00263)

———

*Lori A. Rubin* argued the cause for appellants. With her on
the briefs was *Donald H. Romano*. *Robert L. Roth* entered an
appearance.

2

*Thomas G. Pulham*, Attorney, U.S. Department of Justice, argued the cause for federal appellee. With him on the brief was *Abby C. Wright*, Attorney.

Before: ROGERS, GARLAND and KATSAS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In response to the challenge by a group of hospitals to a 0.2% reduction in Medicare reimbursement rates for inpatient hospital services, the district court remanded the Fiscal Year 2014 Rule to the Secretary of Health and Human Services without vacating the Rule. After curing the procedural deficiencies on remand and eliminating the rate reduction prospectively, beginning in Fiscal Year 2017, the Secretary increased the Medicare inpatient rates by 0.6% for Fiscal Year 2017 to offset the past effects of the abandoned rate reduction. The district court granted summary judgment for the Secretary. Some hospitals appeal, contending that the district court erred in failing to vacate the FY 2014 Rule or at least require the Secretary to provide make whole relief for each individual hospital. Because the district court was not required to vacate the Rule or order make whole relief as the hospitals sought, and the remedy on remand reasonably addressed the problem, we affirm the grant of summary judgment. The district court also did not err in partially granting and denying statutory interest to certain hospitals in accord with this court's precedent. Accordingly, we affirm.

**I.**

The Medicare program reimburses healthcare providers for a portion of costs incurred in treating Medicare beneficiaries. *See* Title XVIII of the Social Security Act, Pub.

L. No. 89–97, 79 Stat. 291 (1965) (codified as amended at 42 U.S.C. § 1395 *et seq*.). Under a "complex statutory and regulatory regime," *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404 (1993), hospitals are reimbursed through a prospective payment system that fixes standard, nationwide reimbursement rates for categories of treatment, subject to various adjustments. *See* Social Security Amendments of 1983, Pub. L. No. 98–21, § 601, 97 Stat. 65, 149 (1983); *see also Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1227 (D.C. Cir. 1994). The payment system for inpatient hospital care under Medicare Part A, *see* 42 U.S.C. §§ 1395c–1395i-5, is known as the Inpatient Prospective Payment System ("IPPS").

The Secretary of Health and Human Services adjusts IPPS reimbursement rates in annual rulemakings. *Cape Cod Hosp. v. Sebelius*, 630 F.3d 203, 205–06 (D.C. Cir. 2011); *see, e.g.*, 42 U.S.C. §§ 1395ww(b)(3)(B), (d)(3)(A)–(C), (E); 42 C.F.R. § 412.64(d). Hospitals may seek review of IPPS rates before the Provider Reimbursement Review Board. 42 U.S.C. § 1395*oo*(a)(1)(A)(ii). If the Board determines that it lacks authority to decide a relevant "question of law or regulations," then a hospital may file a civil action in the federal district court within sixty days of notice of the Board's determination. *Id.* § 1395*oo*(f)(1). The reviewing court shall award annual interest on the amount in controversy if the hospital prevails. *Id.* § 1395*oo*(f)(2).

In a rulemaking on IPPS rates for Fiscal Year 2014, the Secretary adopted the "2-midnight" policy to guide hospitals in determining when to admit Medicare beneficiaries for inpatient care and qualify for reimbursement under Medicare Part A. *See* Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Fiscal Year 2014

Rates, 78 Fed. Reg. 50,496, 50,949–50 (Aug. 19, 2013) ("FY 2014 Rule"). Costs for hospital stays of at least two midnights are presumptively appropriate for reimbursement at inpatient rates. *Id.* at 50,949. Because the actuaries had estimated this policy change would increase annual IPPS expenditures by approximately $220 million, *id.* at 50,952, the Secretary reduced IPPS rates by 0.2% to offset the predicted increase, *id.* at 50,953–54; *see* 42 U.S.C. § 1395ww(d)(5)(I)(i).

Hospitals challenged the rate reduction in the FY 2014 Rule. Among other things, they argued that that the Secretary had failed to provide sufficient notice of the actuarial assumptions and methodologies used to support the reduction, and that the rate reduction was arbitrary and capricious and should be vacated. The district court remanded the Rule to the Secretary for further administrative proceedings without vacating the Rule. *Shands Jacksonville Med. Ctr. v. Burwell* ("*Shands I*"), 139 F. Supp. 3d 240, 271 (D.D.C. 2015). The court observed that on remand the Secretary's decision and accompanying explanation may change. *Id.* at 266.

On remand, the Secretary issued a supplemental notice that described the methodology used to predict the $220 million cost increase of the 2-midnight policy. The notice requested comments on the methodology and other aspects of the rate reduction. Since the 2-midnight policy was implemented, the exceptions had been revised and new actuarial estimates showed that the policy's impact varied between savings and cost between FY 2014 and FY 2015. Upon considering the comments received in response to the supplemental notice, the Secretary explained in proposing changes to the Rule that "the original estimate for the 0.2 percent reduction had a much greater degree of uncertainty than usual." Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective

Payment System and Proposed Policy Changes and Fiscal Year 2017 Rates, 81 Fed. Reg. 24,946, 25,137 (Apr. 27, 2016) ("FY 2017 Proposed Rule"). In the preamble to the final rule, the Secretary acknowledged "no longer [being] confident that the effect of the 2-midnight policy . . . may be measured in this context." Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year 2017 Rates, 81 Fed. Reg. 56,762, 57,060 (Aug. 22, 2016) ("FY 2017 Rule"). The Secretary, therefore, eliminated the 0.2% rate reduction for all future years and increased the IPPS rates for FY 2017 by 0.6% to account for the three years the reduction was in effect. *Id.* at 57,059–60. Commenters noted that closed or converted hospitals would not benefit from the rate increase and the Secretary determined the cost report settlement process would be used for those hospitals. *Id.* at 57,060. The Secretary also stated that hospitals with pending cases challenging the rate reduction were entitled to statutory interest and would receive a slight, incremental increase to the rate adjustment by a factor consistent with interest rates in effect for the relevant time periods. *Id.*

The district court thereafter granted summary judgment to the Secretary. *Shands Jacksonville Med. Ctr., Inc. v. Azar* ("*Shands II*"), 366 F. Supp. 3d 32, 40 (D.D.C. 2018). Upon returning to the district court, the hospitals argued that because the Secretary no longer defended the rate reduction, the district court was required to vacate the Rule and order make whole relief on an individual hospital basis or, alternatively, order make whole relief even without vacatur. The district court, noting the absence of such a statutory make whole requirement, reasoned that having "lost confidence" in the actuarial assumptions underlying the rate reduction, *id.* at 51, the Secretary was not required to rescind the rate reduction

formally and could adopt another "reasonable means of undoing" its effects, *id.* at 54. In the district court's view, even if some hospitals came out ahead and some were not made whole and came out behind, *id.* at 51–52, the Secretary's chosen remedy overall "was reasonably calibrated to address the problem it sought to remedy," *id.* at 53.

The district court also, upon applying *Tucson Medical Center v. Sullivan*, 947 F.2d 971 (D.C. Cir 1991), partially granted and denied the hospitals' motions for an award of statutory interest on the amount in controversy for the three years the rate reduction was in effect. *Shands Jacksonville Med. Ctr., Inc. v. Azar* ("*Shands III*"), No. 14–263, 2019 WL 1228061, at *2 (D.D.C. Mar. 15, 2019).

## II.

Certain hospitals (hereinafter, "the Hospitals") appeal the grant of summary judgment to the Secretary and the partial denial of statutory interest. Their challenge to summary judgment focuses on the inadequacy of less than a make whole remedy. The procedural invalidity pointed to the substantive invalidity of the FY 2014 Rule and, therefore, they contend that the district court should have "set aside" and vacated the Rule or at least ensured full refunds to each hospital. Appellants' Br. 19, 28, 30–31 (quoting 5 U.S.C. § 706(2)). Additionally, the Hospitals maintain that the rate increase in the FY 2017 Rule may not be taken into account because they challenge only the FY 2014 Rule. Consequently, "[t]he only proper consideration of the rate increase is as to what relief is left to be granted (*i.e.*, the impact of vacatur)." *Id.* at 42 (emphasis removed).

The court reviews *de novo* both the district court's grant of summary judgment, *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005), and the denials of statutory

interest, which "rest[] on 'an interpretation of the statutory terms that define eligibility for an award,'" *Davy v. Cent. Intelligence Agency*, 456 F.3d 162, 164 (D.C. Cir. 2006) (quoting *Edmonds v. Fed. Bureau of Investigation*, 417 F.3d 1319, 1322 (D.C. Cir. 2005)). As to the Secretary's actions on remand, however, the court's review is limited to determining whether they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Palisades Gen. Hosp.*, 426 F.3d at 403 (quoting 5 U.S.C. § 706(2)(A)); *see* 42 U.S.C. § 1395*oo*(f)(1).

## A.

On the merits, the Hospitals contend that because the Secretary no longer defends the rate reduction in the FY 2014 Rule, it had to be vacated and each individual hospital restored at least to the position it would have occupied had the rate reduction never taken effect, or alternatively, make whole relief was required even without vacatur. In their view, the grant of summary judgment was error because "there is no third option if the agency is unable or unwilling to rehabilitate its rule on remand, and the agency has not fully compensated aggrieved parties." Appellants' Br. 19.

It is well settled that "[a]n inadequately supported rule . . . need not necessarily be vacated," *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) (citations omitted), because an agency may be able to rehabilitate its rule on remand, and the consequences of vacatur "may be quite disruptive," *id.* at 151. The district court's decision to remand was based on agreement with the hospitals' procedural objection that the FY 2014 rulemaking failed to provide notice of the underlying methodology. *See Shands I*, 139 F. Supp. 3d at 263, 266–71. The Hospitals do not dispute that on remand the Secretary cured the Rule's procedural

deficiencies, by disclosing the actuarial assumptions underlying the predicted cost increase as a result of the 2-midnight policy and providing the public an opportunity to comment. *See Shands II*, 366 F. Supp. 3d at 50. The Secretary subsequently determined not to defend the substance of the Rule and adopted a remedy designed to compensate hospitals for its past effects. Even when a court sets aside an unlawful agency action under the APA, it is ordinarily "the prerogative of the agency to decide in the first instance how best to provide relief." *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) (citation omitted); *see also Palisades Gen. Hosp.*, 426 F.3d at 403. Regulated entities then "of course . . . have the option to seek review on the ground that" the agency's remedy "w[as] 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Bennett*, 703 F.3d at 589 (quoting 5 U.S.C. § 706(2)(A)). These principles apply with no less force when an agency voluntarily abandons its own action in the course of correcting procedural deficiencies, as occurred here. The limits of review of the Secretary's action are consistent with the "heightened deference" that courts are to accord "the Secretary's interpretation of a 'complex and highly technical regulatory program' such as Medicare." *Methodist Hosp.*, 38 F.3d at 1229 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

The Hospitals' purported precedential support for their position that the district court erred in failing to vacate the FY 2014 Rule, or at least order make whole relief once the Secretary acknowledged the rate reduction was unsupported, does not withstand analysis. They point to *Comcast Corp. v. Federal Communications Commission*, 579 F.3d 1, 9 (D.C. Cir. 2009), where the court vacated a deficient rule that was not supported on remand. For the proposition that vacatur requires restoring the *status quo ante*, the Hospitals point to *Allied-Signal*, 988 F.2d at 151. But the agencies in those cases

continued to defend the validity of the challenged rules going forward. *See Comcast*, 579 F.3d at 5; *Allied-Signal*, 988 F.2d at 149–50. Neither *Comcast* nor *Allied-Signal* addressed whether vacatur or make whole relief is required where an agency concedes the invalidity of its rule and the sole issue before the court is the adequacy of the remedy that the agency devised.

The Hospitals press on, contending that there is no compelling case here for the creation of precedent permitting a deficient rule to remain on the books. Acknowledging that remand without vacatur may sometimes be appropriate while an agency works to rehabilitate the rule or fully compensate aggrieved parties, the Hospitals point out that the FY 2014 Rule cannot be rehabilitated and the Secretary has mistakenly, in their view, said insufficient compensation is enough. The Hospitals point to precedent rejecting agency attempts in correcting a mistake to deprive aggrieved parties of full compensation. In *Cape Cod Hospital*, 630 F.3d at 213 (emphasis added), this court rejected the Secretary's view that there was no requirement to correct past computational errors in Medicare payments for inpatient services because the cumulative methodology the Secretary had adopted meant that past errors "ha[d] the effect of overly deflating *current* aggregate payments in violation of [a statutory] budget-neutrality mandate." Here, the past rate reduction has no such effect on current IPPS reimbursement rates, nor is budget neutrality required in this context, as the Hospitals acknowledge. Appellants' Br. 40 (citing *Shands II*, 366 F. Supp. 3d at 65). In *Tallahassee Memorial Regional Medical Center v. Bowen*, 815 F.2d 1435, 1456 (11th Cir. 1987), the Eleventh Circuit rejected the Secretary's attempt to apply retroactively a new rule concerning reimbursement rates for malpractice insurance "only to hospitals whose claims" that the prior rule was invalid "[we]re still being reviewed," even

though other hospitals challenging the same prior rule had received reimbursement at different rates. Here, the rate increase applied equally to all hospitals, not solely those with pending lawsuits challenging the validity of the rate reduction, so the same concerns regarding "potential abuse" that animated the Eleventh Circuit in *Tallahassee* are not present. *Id.*

Of course, the Hospitals maintain that the rate increase in the FY 2017 Rule is not properly considered, except in considering the greater relief vacatur would have provided. After all, the Hospitals state, they have challenged only the FY 2014 Rule. But instead of vacating the rate reduction in the FY 2014 Rule, the district court directed further proceedings by the Secretary. The Secretary's substantive responses to the remand order are reflected in the FY 2017 Rule, 81 Fed. Reg. at 57,058 (citing *Shands I*, 139 F. Supp. 3d 240). Contrary to the Hospitals' position, the relevant parts of that Rule are a continuation of the FY 2014 Rule proceedings and could properly be considered by the district court in determining the reasonableness of the Secretary's remedy on remand.

The Hospitals further urge that this is not a case where providing full compensation would result in enormous disruptive consequences as to render partial relief "good enough." Appellants' Br. 38. So they maintain that *Methodist Hospital*, 38 F.3d at 1226, on which the district court relied, is inapposite because there was no APA violation requiring that the deficient agency action be set aside, and given the more significant disruptive consequences. Here, in the Hospitals' view, "it would have been easy enough and not particularly disruptive for the Secretary to make hospitals whole" by identifying the claims paid for Fiscal Years 2014 through 2016 and multiplying the paid amounts by 1.002. Appellants' Br. 40.

The Hospitals fail to show that the Secretary did not make "a reasonable choice between the competing values of finality and accuracy" in adopting the rate increase as an appropriate remedy for the deficient rate reduction. *Methodist Hosp.*, 38 F.3d at 1235 (citation omitted). The Secretary explained that a one-year rate increase was "the most transparent, expedient, and administratively feasible method" to address the past effects of the rate reduction. FY 2017 Proposed Rule, 81 Fed. Reg. at 25,138. Indeed, a significant advantage of the rate increase compared to other proposed approaches was that it allowed hospitals to receive compensation in the "nearest prospective time period," namely the next fiscal year. FY 2017 Rule, 81 Fed. Reg. at 57,059. By contrast, the Hospitals' preferred approach would require the Secretary to recalculate each individual claim paid under the reduced rate between Fiscal Years 2014 and 2016. Not only would this create a significant administrative burden from the Secretary's perspective, but several years could pass before IPPS payments become final. The Hospitals do not dispute that at the time the 0.2% rate reduction was abandoned certain payments to individual hospitals under that rate were not yet final. These payments, the Secretary points out, could not be recalculated immediately under an adjusted rate. Thus, a one-year, across-the-board increase, as opposed to recalculation of individual claims, allowed hospitals to receive compensation more quickly, as well as creating a more efficient process for the Secretary.

The Secretary acknowledged that the rate increase in FY 2017 would not precisely compensate each hospital for payments that were reduced under the FY 2014 Rule. FY 2017 Rule, 81 Fed. Reg. at 57,060. The one-year, 0.6% rate increase was calculated to offset the 0.2% rate reduction that was in effect for three years (0.6% = 0.2% + 0.2% + 0.2%). FY 2017 Proposed Rule, 81 Fed. Reg. at 25,138. Despite this

mathematical symmetry, due to annual fluctuations in the number of inpatient admissions to individual hospitals, the combination of the rate reduction and increase could leave some hospitals slightly better off and others slightly worse off than they would have been had the rate reduction never taken effect. FY 2017 Rule, 81 Fed. Reg. at 57,060. The Hospitals seek a *status quo ante* remedy but nowhere suggest that the better-off hospitals would return the excess funds. Still, the Hospitals have not demonstrated that the rate increase was so imprecise a remedy as to be arbitrary and capricious. They have pointed to nothing in the record, much less presented an argument in their briefs, that the rate increase significantly undercompensated any hospital that had not closed or converted, and for closed and converted hospitals the Secretary established an alternative remedy. *Id.* Although compensation sufficient in the aggregate could be distributed so unevenly as to be arbitrary and capricious, there is no reason to conclude that is the situation here.

**B.**

The Medicare statute provides that where a rate is challenged in the district court, "the amount in controversy shall be subject to annual interest . . . to be awarded by the reviewing court in favor of the prevailing party." 42 U.S.C. § 1395*oo*(f)(2). In *Tucson Medical Center*, 947 F.2d at 979 (citations omitted), the court concluded that "the doctrine of sovereign immunity limits the . . . rights to interest on claims for Medicare reimbursement to that which is expressly authorized by statute," meaning the statutory authorization "must be strictly construed in favor of the government." Eligibility for § 1395*oo*(f)(2) interest thus turns on a four-part inquiry: "First, whether [the Hospitals] sought judicial review pursuant to 42 U.S.C. § 1395*oo*(f)(1); second, whether there was an 'amount in controversy'; . . . third, whether [the Hospitals] were the 'prevailing part[ies],'" *id.* (fourth alteration

in original), and fourth, whether the Hospitals had exhausted their administrative remedies for the fiscal year at issue, *id.* at 979 n.10 (citing *Riley Hosp. & Benevolent Ass'n v. Bowen*, 804 F.2d 302 (5th Cir. 1986); *Nat'l Med. Enters., Inc. v. Sullivan*, No. 89–5165, 1990 WL 169276 (C.D. Cal. July 5, 1990)).

By the statute's plain text, the Hospitals are entitled to interest for each fiscal year that they challenged the rate reduction in court by August 2, 2016, when the Secretary promulgated the FY 2017 rate increase. But this is true only to the extent the Hospitals had filed separate judicial challenges for Fiscal Years 2014, 2015, and 2016, by that date. *Shands III*, 2019 WL 1228061, at \*10. Nevertheless they contend that claims are eligible for interest for all three fiscal years the rate reduction was in effect regardless of which years' rates they challenged in district court or when they filed their lawsuits because the FY 2014 rate reduction carried forward into future years, until it was eliminated in the FY 2017 Rule.

The administrative actions that the Hospitals challenged in the district court were the rules setting the annual IPPS reimbursement rates. Consequently, the Secretary explains, "[i]t is not possible to challenge the rates applied in fiscal year 2015 or 2016 through an appeal of the FY 2014 IPPS Rule because that [R]ule does not set the reimbursement rate for any other year." Appellee's Br. 44. The Board's grant to the Hospitals of expedited judicial review, pursuant to 42 U.S.C. § 1395*oo*(f)(1), confirms that the legal question on the validity of the rate reduction was limited to the particular "subject year." The Hospitals, therefore, had exhausted their administrative remedies only to the extent of their individual fiscal year IPPS rates challenges. *See Tucson*, 947 F.2d at 979 n.10.

Claims that challenged reduced IPPS reimbursement rates after August 2, 2016, when the Secretary promulgated the 0.6%

rate increase, were moot when filed in the district court. *See id.* at 978. Claims for additional compensation through recalculation of past payments do not satisfy the "prevailing party" requirement of 42 U.S.C. § 1395*oo*(f)(2) because no court has awarded "the disputed amount." *Id.* at 982.

Accordingly, we affirm the grant of summary judgment to the Secretary and the partial award and denial of statutory interest.